Frank A. Magnanimo (SBN 174570)
E-Mail: fmagnanimo@fisherphillips.com
Lirit A. King (SBN 252521)
E-Mail: lking@fisherphillips.com
FISHER & PHILLIPS LLP
21600 Oxnard Street, Suite 650
Woodland Hills, California 91367
Telephone: (818) 230-4250
Facsimile: (818) 230-4251

Landon R. Schwob (SBN 280908)
E-Mail: lschwob@fisherphillips.com
FISHER & PHILLIPS LLP
444 South Flower Street, Suite 1500
Los Angeles, California 90071
Telephone: (213) 330-4500
Facsimile: (213) 330-4501

Attorneys for Defendant
SECURITAS SECURITY SERVICES USA, INC.

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAMON LEE, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SECURITAS SECURITY SERVICES USA, INC.; a Delaware Corporation; and DOES 1-50, inclusive,<br><br>Defendant. | Case No.:<br><br>**DEFENDANT SECURITAS SECURITY SERVICES USA, INC.'S NOTICE OF REMOVAL OF ACTION PURSUANT TO 28 U.S.C §§ 1332, 1441 AND 1446**<br><br>CLASS ACTION<br><br>Complaint Filed: May 20, 2025<br>Trial Date: Not Set |

**TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA AND TO PLAINTIFF DAMON LEE AND HIS COUNSEL OF RECORD:**

PLEASE TAKE NOTICE THAT DEFENDANT SECURITAS SECURITY SERVICES USA, INC. ("Defendant" or "SUSA") through its undersigned counsel, hereby respectfully removes this action filed by Plaintiff DAMON LEE (hereinafter, "Plaintiff") from the Superior Court of the State of California, in and for the County of Alameda (the "State Court"), to the United States District Court for the Northern District of California. This removal is based on the grounds of diversity jurisdiction pursuant to 28 U.S.C. §§ 1332 and 1441(a) and (b) and is timely under 28 U.S.C. § 1446. This Court has jurisdiction over the claims asserted in this action under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). This Notice of Removal is supported by the accompanying Declarations of Sarah Jingco ("Jingco Decl.") and Bradley Abert ("Abert Decl.") and supporting exhibits filed concurrently herewith.

## I. <u>FACTUAL AND PROCEDURAL BACKGROUND</u>

1. On May 20, 2025, Plaintiff, on behalf of himself and others similarly situated, filed an unverified Complaint ("Complaint") in the Superior Court of the State of California, County of Alameda, against Defendant SECURITAS SECURITY SERVICES USA, INC. ("Defendant" or "SUSA") initiating the civil action entitled *DAMON LEE, individually and on behalf of all others similarly situated, Plaintiff v. SECURITAS SECURITY SERVICES USA, INC., a Delaware Corporation and DOES 1-50, inclusive*, Case No. 25CV123910 ("State Court Action" or "Complaint").

2. Pursuant to 28 U.S.C. § 1446(a), a true and correct copy of the Complaint is attached as **Exhibit ("Ex.") A** to the Declaration of Frank A. Magnanimo ("Magnanimo Decl."). The allegations of the Complaint are incorporated by reference in this Notice of Removal without admission or agreement of the truth of any of them.

3. In his Complaint, Plaintiff alleges seven class-wide causes of action against Defendants: (1) Failure to Pay Wages Including Overtime as Required by Labor Code §§ 510 and 1194; (2) Failure to Provide Meal Periods as Required by Labor Code §§ 226.7, 512 and IWC Wage Orders; (3) Failure to Provide Rest Periods as Required by Labor Code §§ 226.7, 512; (4) Failure to Pay Timely Wages Required by Labor Code § 203; (5) Failure to Provide Accurate Wage Statements Required by Labor Code §§ 226,

226.3, 558.1; (6) Failure to Reimburse Necessary Business Expenses Required by Labor Code § 2802; and (7) Violation of Business & Professions Code § 17200, *et seq*. *See* **Ex. A**. Plaintiff seeks general damages, restitution, attorneys' fees, and equitable relief. *Id.*, and Prayer for Relief, generally.

4. Plaintiff served a copy of the Summons and Complaint on SUSA's registered agent for service of process National Registered Agents, Inc., by process server on July 3, 2025. *See* **Ex. B** to Magnanimo Decl.

5. The Complaint also names as defendants "DOES 1 TO 50." Defendant is informed and believes, and on that basis alleges, that none of the fictitiously named defendants have been served with a copy of the Summons and Complaint. Therefore, the fictitiously named defendants are not parties to the above-captioned action and need not consent to removal. (See *Fristoe v. Reynolds Metals, Co.*, 615 F.2d 1209, 1213 (9th Cir. 1980); 28 U.S.C. §1441(a).) No further proceedings have been had in the state court as of the date of this Notice.

6. A true and correct copy of Defendant's Answer to the Complaint, which Defendant filed and served on August 4, 2025, is attached hereto and incorporated herein by reference as **Ex. C** to Magnanimo Decl.

7. A true and correct copy of all additional process, pleadings, and orders served on SUSA in the State Court Action, aside from the Complaint and Answer referenced above, are attached as **Ex. D** to Magnanimo Decl. By signing this Notice of Removal, counsel for SUSA verifies that the items attached as **Exhibits A-E** are true and complete copies of the process, pleadings, and orders in the State Court Action.

8. This removal is timely filed as required by 28 U.S.C. section 1446(b) because it has been filed within 30 days of the date of first service of the State Court Action on SUSA, which was July 3, 2025, and within one year of the date the State Court Action was filed.

## II. STATEMENT OF JURISDICTION

9. **Basis of Jurisdiction.** This Court has original jurisdiction over this action pursuant to 28 U.S.C. section 1332(d). As set forth below, 28 U.S.C. section 1332(d) grants district courts original jurisdiction over civil actions in which the putative class contains at least 100 class members, the parties are minimally diverse, and the matter in controversy exceeds the sum or value of $5,000,000 in the

aggregate for the entire class, exclusive of interest and costs. This case meets all of the diversity statute's requirements for removal and is timely and properly removed by the filing of this Notice. *See* 28 U.S.C. §§ 1332, 1441, and 1446.

10. Although the burden rests on the removing party to demonstrate that CAFA's jurisdictional requirements are met, the party opposing jurisdiction under CAFA bears the burden of demonstrating that any exception to CAFA jurisdiction applies. *Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1022-24 (9th Cir. 2007). Simply put, this case satisfies CAFA's requirements.

11. **Notices of Removal are Subject to a Liberal Pleading Standard.** In 2014, the U.S. Supreme Court held that notices of removal are subject to the same general pleading standards applicable to complaints pursuant to Rule 8(a) of the Federal Rules of Civil Procedure, and that, accordingly, such notices need not attach evidence or meet a burden of proof, but rather need only contain a "short and plain statement of the grounds for removal." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 81 (2014) (quoting 28 U.S.C. § 1446(a)). This governing principle also applies to a removing party's allegations as to the amount in controversy. *Id.*; *Garnett v. ADT LLC*, 74 F. Supp. 3d 1332, 1334 (E.D. Cal. 2015); *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1196-1197 (9th Cir. 2015); *Jackson v. CEVA Logistics*, No. 19-CV-07657-LHK, 2020 WL 1967208, at *8 (N.D. Cal. Apr. 24, 2020); *Fukuchi v. Stein Mart, Inc.*, No. CV 19-8266-MWF (RAOx), 2019 WL 8756866 at *3 (C.D. Cal. 2019). Only if the Court, or another party, contests the allegations of removability must the removing party submit evidence supporting its allegations, whereupon removability is decided under a preponderance of the evidence standard. *Id.*

12. There is no "presumption against removal" when a defendant seeks to remove pursuant to the CAFA. *Dart Cherokee*, 574 U.S. at 81. This putative class action satisfies all the jurisdictional requirements under CAFA. The allegations in the Complaint and the attached declarations demonstrate that: (1) the parties are minimally diverse; (2) the proposed class consists of 100 or more members; (3) the amount in controversy exceeds the $5,000,000 jurisdictional threshold; (4) the primary defendants are not States, State officials, or other governmental entities against whom the districtcourt may be foreclosed from ordering relief; and (5) the exceptions to CAFA jurisdiction do not apply here. *See* 28 U.S.C. § 1332(d).

13. **Sufficient Minimal Diversity.** The parties are diverse, as they are, and were at all relevant times, citizens of different states. 28 U.S.C. § 1332(d)(2)(A). Diversity of citizenship exists in this matter because SUSA is now, and at all times since the filing of the State Court Action has been, incorporated in the State of Delaware, and at all such times its principal place of business is, and has been, in Parsippany, in the State of New Jersey. Jingco Decl. ¶¶ 3-4. At all such times, Plaintiff is and has been a California resident and citizen and Plaintiff asserts his claims on behalf of a putative class of former and current employees who performed work for Defendants within the State of California. **Ex. A** at ¶ 6. It is a *reasonable* inference that at least one member of the putative class is domiciled in and, thus, a citizen of California. *See Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088 (9th Cir. 1983).

14. **Plaintiffs' Citizenship.** Based on the allegations in Plaintiff's Complaint, Plaintiff was a citizen and resident of the State of California at the time this action commenced and remains so at the time of this removal. **Ex. A** at ¶ 6. The presumption of continuing domicile provides a legal presumption that Plaintiff is still a resident of the State of California. *Mondragon v. Capital One Auto Fin.*, 736 F.3d 880, 885–86 (9th Cir. 2013) ("a party with the burden of proving citizenship may rely on the presumption of continuing domicile, which provides that, once established, a person's state of domicile continues unless rebutted . . . . This presumption has been widely accepted, including by this [the Ninth] circuit."). For removal purposes, citizenship is measured both when the action is filed and removed. *Strotek Corp. v. Transport Ass'n of America*, 300 F.3d 1129, 1131 (9th Cir. 2002); *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001). For diversity purposes, a person is a citizen of the State where he or she is domiciled. *See* 28 U.S.C. § 1332(a)(1); *see, also Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088 (9th Cir. 1983). Residence is *prima facie* evidence of domicile. *Mondragon v. Capital One Auto Fin.*, 736 F.3d 880, 885–86 (9th Cir. 2013), citing *Hollinger v. Home State Mut. Ins. Co.*, 654 F.3d 564, 571 (5th Cir. 2011) ("Evidence of a person's place of residence . . . is *prima facie* proof of his domicile."). The Complaint states that "Plaintiff, DAMON LEE, was at all times relevant to this action, a resident of California. Plaintiff was employed by Defendant in July of 2024 until April 2025 as a Non-Exempt Employee with the title of security guard and worked during the liability period for Defendant, at Defendant's Hayward, CA location" **Ex. A** at ¶ 6. Plaintiff alleges that the proposed class consists of persons located in the State of California or who worked in California. **Ex. A** at ¶ 10. Plaintiff, and the

purported class, therefore, at all times since the commencement of this action, have been residents and citizens of California.

15. **SUSA's Citizenship.** At the time Plaintiff filed the Complaint in the State Court, SUSA was (and remains) a citizen of states other than California. Pursuant to 28 U.S.C. section 1332(c), "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." *See Hertz Corp. v. Friend*, 559 U.S. 77, 130 S. Ct. 1181, 1192 (2010) (determining that a corporation's principal place of business, or "nerve center," will typically be where its headquarters is located). At the time Plaintiff's complaint was filed on or about May 20, 2025, SUSA was and continues to be, a corporation which is formed in the state of Delaware. Jingco Decl., ¶ 3.

16. SUSA is headquartered in Parsippany, New Jersey. Jingco Decl., ¶ 4. New Jersey is where SUSA's high-level officers direct, control, and coordinate the company's activities. Id., ¶ 4. Neither California, nor any other state in which SUSA operates, contains a substantial predominance of the company's operations. *Id.* Therefore, SUSA's "nerve center" is in the State of New Jersey. In accordance with *Hertz Corp v. Friend*, 559 U.S. 77 (2010), SUSA is a citizen of the States of Delaware and New Jersey, as provided in 28 U.S.C. §1332(c) and is not a citizen of California.

17. Accordingly, because at least one putative class member is a citizen of a different state than SUSA, CAFA's requirement for minimal diversity is satisfied. See 28 U.S.C. § 1332(d)(2)(A) (diversity is satisfied under CAFA if "any member of a class of plaintiffs is a citizen of a State different from any defendant").

18. Based on the foregoing, Plaintiff and SUSA are citizens of different States. 28 U.S.C. § 1332(d)(2)(A).

19. Moreover, the citizenship of fictitious defendants is disregarded for purposes of establishing removal jurisdiction under 28 U.S.C. § 1332. 28 U.S.C. § 1441(a); *Bryant v. Ford Motor Co.*, 886 F.2d 1526 (9th Cir. 1989), cert. denied, 493 U.S. 1076 (1990).

## III. <u>PUTATIVE CLASS EXCEEDS 100 CLASS MEMBERS</u>

20. CAFA requires that the putative class be comprised of at least 100 persons. See 28 U.S.C. § 1332(d)(5)(B). This requirement is satisfied here.

21. Plaintiff brings this action on behalf of himself and a putative class comprised of "All

persons who have been employed by Defendant as Non-Exempt Employees or equivalent positions, however titled, in the state of California within four (4) years from the filing of the Complaint in this action until its resolution." **Ex. A**, ¶ 10.

22. Based on Plaintiffs' Complaint, the statute of limitations period encompasses over 48 months. Therefore, the putative class includes individuals who were employed by Defendant in California throughout this period.

23. **Putative Class Members.** There are currently approximately 14,036 hourly, non-exempt individuals employed by SUSA in California. Abert Decl. ¶3. There are approximately 37,510 hourly, non-exempt California employees who separated from employment during the relevant period. Abert Decl. ¶3.

## IV. AMOUNT IN CONTROVERSY

24. To confer subject-matter jurisdiction on this Court based on diversity of citizenship, the amount in controversy must exceed the sum or value of $5,000,000, exclusive of interest and costs. See 28 U.S.C. § 1332(d)(2). Under CAFA, the claims of the individuals comprising a putative class are aggregated to determine if the amount in controversy exceeds the $5,000,000 jurisdictional threshold. Id. § 1332(d)(6).

25. **The Amount In Controversy Exceeds $5,000,000.** Plaintiff does not specify damages sum in his Complaint. Notwithstanding the fact that Plaintiff fails to specify the dollar amount of damages being sought in the Complaint, the allegations of the Complaint demonstrate that Plaintiff seeks damages in excess of the jurisdictional requirement of $5,000,000. Economic damages, non-economic damages, general damages, and attorneys' fees are all included in determining the amount in controversy. *See Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155-56 (9th Cir. 1998); *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 701 (9th Cir. 2007).

26. A defendant seeking removal under CAFA must prove *by a preponderance of the evidence*, rather than to a legal certainty, that the amount in controversy exceeds $5 million, even when plaintiffs allege damages below that threshold. *Rodriguez v. AT & T Mobility Servs. LLC*, 728 F.3d 975 (9th Cir. 2013). A plaintiff's attempts to evade federal jurisdiction through pleading tactics and waivers that artificially limit the amount in controversy will be invalidated. *Standard Fire Ins. Co. v. Knowles*, 568

U.S. 588 (2013)

27. Federal courts have consistently held that plaintiffs cannot avoid CAFA removal simply by alleging damages below $5,000,000. *Id*. The Ninth Circuit recognized that "a waiver [of claims exceeding $5 million] was ineffective" following the Supreme Court's decision in *Knowles*, *supra*. The Supreme Court "held that a lead plaintiff of a putative class could not foreclose a defendant's ability to establish the $5 million amount in controversy by stipulating prior to class certification that the amount in controversy is less than $5 million." *Id*.

28. Although SUSA denies Plaintiff's allegations and denies that the putative class is entitled to any relief from SUSA, in determining the amount in controversy the Court must assume the allegations in the Complaint are true. Further, a defendant's notice of removal need only include a "plausible allegation that the amount in controversy exceeds [this] jurisdictional threshold." *Dart Cherokee*, 574 U.S. at 89. CAFA's amount-in-controversy requirement is satisfied under these pleading standards.

29. While SUSA denies Plaintiff's claim of wrongdoing and denies that Plaintiff is entitled to any requested relief, the facial allegations in Plaintiff's complaint and the total amount of wages, penalties, attorneys' fees, and other monetary relief at issue in this action is in excess of this court's jurisdictional minimum. *Saulic v. Symantec Corp.*, 2007 WL 5074883, *7–9 (C.D. Cal. 2007) (finding jurisdictional limits were satisfied under CAFA after considering facts presented in notice of removal, along with plaintiff's allegations); *see also Salter v. Quality Carriers, Inc.*, 2020 WL 5361459, *4 (9th Cir. 2020) (evidentiary submissions were not required to raise plausible allegations that the amount in controversy exceeded CAFA's $5 million jurisdictional threshold). SUSA is permitted to make reasonable assumptions, follow "a reasonable chain of logic," and make reasonable calculations to plead that the amount in controversy exceeds the CAFA threshold. *See LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1201 (9th Cir. 2015) ("[D]efendants relied on a reasonable chain of logic and presented sufficient evidence to establish that the amount in controversy exceeds $5 million.").

30. Where plaintiffs allege that a defendant has "'adopted and maintained uniform policies, practices and procedures' that caused the purported violations of California's [laws]…[i]t is not unreasonable to assume that when a company has unlawful policies and they are uniformly 'adopted and maintained,' then the company may potentially violate the law in each and every situation where those

policies are applied." *Mejia v. DHL Express (USA), Inc.*, 2015 WL 2452755, *4 (C.D. Cal. May 21, 2015). In that instance, "a 100% violation rate is not an unreasonable assumption to use in estimating the amount in controversy in light of the allegations in the complaint." *Id.* Here, Plaintiff alleges Defendant maintained policies and practices of not providing Plaintiff and putative class members for all time worked, not providing uninterrupted, duty-free meal periods for at least 30 minutes for each five hour work period, not providing breaks of ten uninterrupted minutes for each four hours of work or major fraction of four hours, of not furnishing them with accurate itemized wage statements, and failing to reimburse them for necessary business expenses. **Ex. A**, ¶¶ 23, 32, 38.

31. **The Court Must Assume a 100% Violation Rate Based on Plaintiff's Class-Wide Allegations.** If a plaintiff asserts statutory violations the court must assume the violation rate is 100% unless the plaintiff specifically alleges otherwise.

> As these allegations reveal, plaintiff includes no fact-specific allegations that would result in a putative class or violation rate that is discernibly smaller than 100%, used by defendant in its calculations. Plaintiff is the "master of [her] claim[s]," and if she wanted to avoid removal, she could have alleged facts specific to her claims which would narrow the scope of the putative class or the damages sought. She did not.

*Muniz v. Pilot Travel Ctrs. LLC*, 2007, U.S.Dist.LEXIS 31515, at *13 (E.D. Cal. Apr. 30, 2007) (citing *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987); *see also Wheatley v. MasterBrand Cabinets, LLC*, 2019, U.S.Dist.LEXIS 26201, at *13 (C.D. Cal. Feb. 19, 2019) ("Defendant and the Court must rely on assumptions regarding the rate of the alleged violations … Plaintiff does not allege that some putative class members were subject to distinct policies. The Court therefore finds the assumption that uniform … policies were applied to all putative class members reasonable"); *Soratorio v. Tesoro Ref. & Mktg. Co., LLC*, 2017, U.S.Dist.LEXIS 63627, at *8 (C.D. Cal. Apr. 26, 2017) ("Plaintiff's Complaint could be reasonably read to allege a 100% violation rate. The Complaint notes that Defendants 'did not provide' Plaintiff and the other class members 'a thirty minute meal period for every five hours worked,' and that this was Defendant's 'common practice.' It also alleges that Defendants had a practice of 'requiring employees to work for four hours and more without a rest period' and that Defendants had a 'common practice' of failing to provide required breaks."); *Arreola v. Finish Line,* 2014, U.S.Dist.LEXIS 170464, at *12 (N.D. Cal. Dec. 9, 2014) ("District courts in the Ninth Circuit have permitted a defendant removing

an action under CAFA to make assumptions when calculating the amount in controversy—such as assuming a 100 percent violation rate, or assuming that each member of the class will have experienced some type of violation—when those assumptions are reasonable in light of the allegations in the complaint."); *Coleman v. Estes Express Lines, Inc*., 730 F. Supp. 2d 1141, 1149 (C.D. Cal. 2010), *aff'd sub nom. Coleman v. Estes Exp. Lines*, Inc., 631 F.3d 1010 (9th Cir. 2011) ("[C]ourts have assumed a 100% violation rate in calculating the amount in controversy when the complaint does not allege a more precise calculation").

32. Therefore, in calculating the amount in controversy, Defendant may rely on a 100% violation rate. The amount in controversy exceeds the sum of $5,000,000 exclusive of interest and costs, based on the following allegations and evidence, which do not even include Plaintiff's additional claims for reimbursement of necessary business expenses and violation of Business and Professions Code § 17200. In calculating the amount in controversy, Defendant also relies on the California minimum wage in 2022, which was $15.00 per hour.

33. **Overtime**. There are currently approximately 14,036 hourly, non-exempt individuals employed by SUSA in California. Abert Decl. ¶3. There are approximately 37,510 hourly, non-exempt California employees who separated from employment during the relevant period. Abert Decl. ¶3.

34. Over the four-year statute of limitations period, assuming each putative class member worked one hour of unpaid overtime per workweek and multiplying that number by the California minimum wage in 2022 ($15.00) and the overtime multiplier (.5), the potential liability on Plaintiff's overtime claim is at least **$74,226,240** [*1 hour premium pay ($15.00) x (14,036 individuals + 37,510 individuals) x 192 work weeks x .5*].

35. **Meal Period Claim**. Plaintiff alleges in his second cause of action for failure to provide meal periods that "For the four (4) years preceding the filing of this lawsuit, Defendant failed to provide Plaintiff and Class Members, timely and uninterrupted meal periods of not less than thirty (30) minutes." **Ex. A**, ¶ 62. Accordingly, Plaintiff asserts that he and the putative class members are owed an hour of additional pay for noncompliant meal periods for each workday such periods were not provided. *Id.* at ¶ 65. As Plaintiff's meal period claim is also asserted as part of a separate claim under California's Unfair Competition Law ("UCL") (i.e., Plaintiff's ninth cause of action), a four-year limitations period applies.

See *Cortez v. Purolator Air Filtration Prod. Co*., 23 Cal. 4th 163, 179 (2000) ("Any action on any UCL cause of action is subject to the four-year period of limitations created by that section.") (emphasis in original); *Murphy v. Kenneth Cole Productions, Inc*., 40 Cal. 4th 1094, 1103 (2007) (meal and rest period premiums are wages); *Pineda v. Bank of Am., N.A*., 50 Cal. 4th 1389, 1401 (2010) (unpaid wages recoverable as restitution under the UCL).

36. The class data here reveals that approximately of 14,036 hourly, non-exempt employees are currently employed by SUSA in California. Abert Decl., ¶ 3. Assuming two days per employee per week with one noncompliant meal period per day (either because it was interrupted or not taken at all), each employee would be entitled to two additional hours of pay for each week they worked over the 48-month (or 192 work week) statute of limitations period. Thus, using this conservative measure results in an amount in controversy just on his meal period claim alone of **$80,847,360** *[$15.00 (one hour of pay) x 2 days per workweek x 192 workweeks x 14,036 employees]*.

37. **Rest Breaks**. Assuming two rest break violations per employee per week (either because it was interrupted or not taken at all), each employee would be entitled to two additional hours of pay for each week they worked over the 48-month (or 192 work week) statute of limitations period. Over a span of 48 months, the potential liability on Plaintiff's claim is **$80,847,360** [*1 hour premium pay x $15.00 minimum wage x 14,036 x 192 work weeks x 2 days*].

38. **Waiting Time Penalties Claim**. From the face of the complaint, Plaintiff's claim for waiting time penalties is derivative of his other claims. Courts have observed that when a practice of wage and hour violations is alleged, as is the case here (Complaint ¶¶ 84-88), "the recovery of waiting time penalties does not hinge on the number of violations committed; rather Defendants need only have caused and failed to remedy *a single violation* per employee for waiting time penalties to apply." *Demaria v. Big Lots Stores – PNS, LLC*, 2023 WL 6390151, at *7 (E.D. Cal. Sept. 29, 2023) (internal quotation marks, citation omitted) (emphasis added). In *Demaria*, the plaintiff alleged the defendants had "a practice and policy" of wage and hour violations, including overtime, meal break, and rest break violations. *Id.,* 2023 WL 6390151, at *5-6. Given the alleged "practice and policy" of violations, the Court found it was "reasonable to assume all or nearly all employees in the class would be entitled to recovery of waiting time penalties." *Id.* at *7 (citing *Cavada v. Inter-Continental Hotels Grp.*, 2019 WL 5677846, at *9 (S.D.

Cal. Nov. 1, 2019).)

39. Likewise, the Central District determined that when a waiting time claim is derivative of other Labor Code violations on behalf of a class, a 100% violation rate is appropriate for former employees. *Wilcox v. Harbor UCLA Med. Ctr. Guild, Inc.*, 2023 WL 524626 (C.D. Cal. Aug. 14, 2023).

40. Here, Defendant's records indicate that there are approximately 37,510 hourly, non-exempt California employees who separated from employment during the relevant period. Abert Decl. ¶3. Plaintiff's waiting time penalties claim would be **<u>$135,036,000</u>** [*$15.00 minimum wage x 8 hours per day x 30 days x 37,510 individuals*].

41. **<u>Wage Statement Claim</u>**. Here, Plaintiff alleges, as a "result of Defendant's knowing and intentional failure to comply with Labor Code § 226(a), Plaintiff and Class Members have suffered injury and damage to their statutorily protected rights" **Ex. A** ¶ 89. Plaintiff also incorporates all prior allegations, including those related to failure to provide meal and rest breaks, pay overtime wages, all hours worked, and minimum wages. *Ibid.* ¶ 86. Taking into account each employee can receive up to $4,000 for wage statement violations, the total potential liability for the wage statement claim is **<u>$206,184,000</u>** [*(14,036 individuals + 37,510 individuals) x $4,000*]. This is based on 14,036 individuals employed by Defendant at the time of Removal, and the maximum amount in violations as well as the 37,510 hourly, non-exempt California employees who separated from employment during the relevant period. Abert Decl. ¶3.

42. **<u>Plaintiff's Prayer For Attorneys' Fees.</u>** "When a statute or contract provides for the recovery of attorneys' fees, prospective attorneys' fees must be included in the assessment of the amount in controversy." *Arias v. Residence Inn by Marriott,* 936 F.3d 920, 922 (9th Cir. 2019) (citing *Fritsch v. Swift Transportation Co. of Arizona, LLC,* 899 F.3d 785, 794 (9th Cir. 2018)).While the Ninth Circuit does not follow a per se rule regarding the amount of attorneys' fees for purposes of CAFA removal, there is no doubt that an estimate of "25 percent of the potential damages" as the amount of potential attorneys' fees recoverable by a plaintiff "might be reasonable." *Arias,* 936 F.3d at 928. As discussed above, the Court "must assume that the allegations of the complaint are true and that a jury will return a verdict for the plaintiff ***on all claims made in the complaint***," meaning that the estimated amount of attorneys' fees should assume that Plaintiff will prevail on every claim. *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008) (emphasis added).

43. In *Fritsch*, after the Ninth Circuit remanded the case to this Court, the Court approved defendant's estimate of attorneys' fees under two different methods of calculation. The Court noted that it had discretion to award attorneys' fees in a class action settlement by applying either the percentage-of-the-fund method or the lodestar method, and therefore explained that the calculation of the amount of future attorneys' fees at stake under either method is appropriate. *Fritsch v. Swift Transp. Co. of Ariz., LLC*, 2018 WL 6427722, at *3 (C.D. Cal. Dec. 3, 2018)

44. Under the first method, the court noted that "[t]wenty-five percent of the amount is the 'benchmark' for reasonable attorneys' fees in class action cases." *Fritsch v. Swift Transp. Co. of Ariz., LLC*, 2018 WL 6427722, at *3 (C.D. Cal. Dec. 3, 2018) (citing *Garibay v. Archstone Cmts. Ltd. Liab. Co.*, 539 F. Appx. 763, 764 (9th Cir. 2013)). The court assumed the 25% attorneys' fee of the total amount that had been demonstrated at issue ($4,628,575), which brought the total at issue to $5,785,718.75. *Fritsch*, 2018 WL 6427722, at *3.

45. Here, Plaintiff seeks attorneys' fees for all causes of action. Complaint, ¶¶ 4, 70, 77, 83, 100, 105, 118, Prayer for Relief.

46. Based on the conservative calculations above, the total amount in controversy on Plaintiff's claims, is at least **<u>$577,140,960</u>**.[1] This does not include damages based on Plaintiff's seventh through ninth causes of action.

47. For purposes of considering fees for the amount in controversy, the attorneys' fees are not limited to only those incurred prior to removal, but also what plaintiff may recover for violations after removal. C*havez v. City of Los Angeles,* 888 F.3d 416 (9th Cir. 2018). Using the percentage-of-the-fund method and a conservative 25% for attorneys' fees as discussed above, this brings the total amount in controversy to, at least, $**721,426,200** [**$577,140,960** *x 1.25*].

48. Based on the foregoing, there is ample evidence that the amount in controversy, based on the totality of Plaintiff's claims, exceeds the minimum threshold of $5,000,000. Notably, the foregoing analysis and calculation <u>does not</u> include Defendant's additional potential liability for Plaintiff's causes of action for failure to reimburse business expenses and unfair business practices.

49. By removing this matter, SUSA does not waive and, to the contrary, reserves any rights it

[1] **$74,226,240 + $80,847,360 + $80,847,360 + $135,036,000 + $206,184,000 = $577,140,960**

may have, including, without limitation, all available arguments and defenses. "The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability." *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010).

## V. ALL OTHER REQUIREMENTS FOR REMOVAL ARE SATISFIED

50. **Venue and Intradistrict Assignment.** Pursuant to 28 U.S.C. section 1441(a), "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." *See Polizzi v. Cowles Magazines*, *Inc.*, 345 U.S. 663, 666 (1953) (holding the venue of a removed action is governed by 28 U.S.C. section 1441(a) and is properly laid in the district embracing the place where the action is pending). This Court (the San Jose Division of the Northern District of California) embraces the Alameda County Superior Court, which is where Plaintiff's Complaint was originally filed and where the action is currently pending. Accordingly, this Court is the appropriate federal district court to which to remove this action.

51. **Notice of Removal.** As required by 28 U.S.C. section 1446(d), a copy of the Notice of Removal will be attached to a document entitled Notice to Adverse Parties and State Court of Defendant SUSA's Filing of Notice of Removal, attached as **Ex. E** to Magnanimo Decl., which will be promptly served on Plaintiff's counsel of record and filed with the Clerk of the Superior Court of the State of California, in and for the County of Alameda.

52. In compliance with 28 U.S.C. section 1446(a), true and correct copies of all "process, pleadings, and orders" from the State Court Action served on SUSA or filed by SUSA are attached to the Notice of Removal as **Ex. A-E**.

## VI. CONCLUSION

Sufficient minimal diversity of citizenship exists inasmuch as Plaintiff is a citizen of California and SUSA is a citizen of Delaware and New Jersey. Furthermore, the amount in controversy exceeds $5,000,000. Moreover, the putative class exceeds 100 members. Finally, no exceptions apply pursuant to CAFA. Accordingly, this Court has diversity jurisdiction of this matter pursuant to 28 U.S.C. sections 1332, 1441, and 1446, and SUSA has properly removed the State Court Action to this Court. SUSA reserves, and does not waive, any objections it may have to jurisdiction, venue, and any and all other

defenses or objections to the action.

Dated: August 4, 2025

Respectfully submitted,

FISHER & PHILLIPS LLP

By: *s/ Lirit A. King*
Frank A. Magnanimo
Lirit A. King
Landon R. Schwob

Attorneys for Defendant
SECURITAS SECURITY SERVICES USA, INC.

## CERTIFICATE OF SERVICE

I, the undersigned, am at least 18 years old and not a party to this action. I hereby certify that I am employed in the office of a member of the Bar of this Court at whose direction the service was made. I am employed in the County of Los Angeles with the law offices of Fisher & Phillips LLP and its business address is 444 South Flower Street, Suite 1500, Los Angeles, California 90071.

On August 4, 2025, I served the foregoing document titled, **DEFENDANT SECURITAS SECURITY SERVICES USA, INC.'S NOTICE OF REMOVAL OF ACTION PURSUANT TO 28 U.S.C §§ 1332, 1441 AND 1446** on all the appearing and/or interested parties in this action as follows:

James R. Hawkins
Gregory Mauro
Michael Calvo
Lauren Falk
Ava Issary
JAMES HAWKINS APLC
9880 Research Drive, Suite 200
Irvine, CA 92618

***Attorneys for Plaintiff***
**DAMON LEE, *individually and on behalf of all others similarly situated***

Tel.: (949) 387-7200
Fax: (949) 387-6676
Email: James@jameshawkinsaplc.com; Greg@jameshawkinsaplc.com; Michael@jameshawkinsaplc.com; Lauren@jameshawkinsaplc.com; Ava@jameshawkinsaplc.com

☒ **[by MAIL]** - I enclosed a true and correct copy of the document(s) in a sealed envelope or package addressed to the person(s) whose address(es) are listed above and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with this business's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service in Los Angeles California, in a sealed envelope with postage fully prepaid.

☐ **[by OVERNIGHT DELIVERY]** - I enclosed a true and correct copy of the document(s) in an envelope or package provided by an overnight delivery carrier and addressed to the person(s) at the address(es) listed above. I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight carrier.

☐ **[by ELECTRONIC SERVICE]** - Based on a court order or an agreement of the parties to accept service by electronic transmission, I electronically served the document(s) to the person(s) at the electronic service address(es) listed above.

I declare under penalty of perjury, under the laws of the United States of America, that the foregoing is true and correct.

Executed August 4, 2025, at Los Angeles, California.

Cina Kim
Print Name

By: */s/ Cina Kim*
Signature